# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

### EAST ST. LOUIS DIVISION

| | |
|---|---|
| Elizabeth Steines, individually and on behalf of all others similarly situated, | 3:22-cv-03099 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Apple, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Apple, Inc. ("Defendant") manufactures, markets, and sells the iPhone smartphone, pictured next to the box it is sold in ("Product").[1][2]

 

---

[1] References to a model or version of an iPhone are for example only, as the subject devices include the 12 through 14 series.

[2] This action is not related to or coordinated with ongoing enforcement activities in other countries related to substantially similar allegations.

2.      To use the Product requires electricity, supplied by a charger, which refers to a power adapter (left) plugged into an outlet with a cable (right) taking energy from a wall to the phone.



3.      An iPhone purchaser previously received a charger with their phone so they could supply it with energy and use it for its intended purposes, whether email, browsing the internet, work, reading or playing games.

4.      Beginning last year, Defendant no longer included the power adapter, citing environmental benefits from forgoing the mining of precious metals required for its production and a reduction in waste, presumably by encouraging customers to use their old chargers.

5.      This explanation fails to account for the situation of a large percentage of iPhone purchasers for multiple reasons.

6.      First, not all iPhone purchasers previously had iPhones or other Apple devices, which meant they did not have extra or any chargers to use.

7.      Second, iPhone purchasers upgrading to a new model may (1) no longer have the charger which came with their device, (2) not have received a charger with their prior iPhone, (3) have a charger which is no longer compatible with the iPhone they are buying and/or (4) have a charger which has become non-functional due to age and/or usage.

8.      Plaintiff and consumers were not aware they were purchasing an incomplete Product, devoid of essential functionality, because this was only disclosed on the back of the box, in small

print, stating, "Includes: iPhone 14 Pro Max and USB-C to Lightning Cable; power adapter and

headphones sold separately."





9.     By selling the Product without a charger, it is not adequate for its intended use, which

was to function as a phone and mini-computer, because it requires power or energy to operate.

10.     Where the utility of a good depends upon another good which is not provided by the

manufacturer, the good is considered defective or at a minimum, diminished in value.

11.     By not providing a charger, customers like Plaintiff are forced to spend additional

money on a charger.

12.     When Defendant removed the charger, not only was the price of the Product not

correspondingly reduced by the amount of the power adapter, the price increased, unrelated to

other added functionality which could justify this increase.

13.     If a customer realizes in the store that the iPhone they purchased does not come with a charger, they will almost always want to go home with a charger.

14.     Though lower-priced chargers are available online, the stores where most purchases are made – operated by Apple and cell phone companies – only sell costly chargers for not less than $30.

15.     Defendant could have taken other measures to promote environmental sustainability, by adopting industry standard USB-C chargers, instead of rendering the Product non-functional unless an additional purchase was made.

16.     Defendant could have made chargers available for free to iPhone purchasers who request them.

17.     As a result of the false and misleading representations and omissions, the Product is sold for a price premium, approximately no less than $700 for the lowest price version, excluding tax and sales.

<u>Jurisdiction and Venue</u>

18.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

19.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

20.     Plaintiff is a citizen of Illinois.

21.     Defendant is a California corporation with a principal place of business in California.

22.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

23.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from Defendant's stores and website, and from third-parties including mobile phone companies and retail stores and online in the States covered by Plaintiff's proposed classes.

24.     Venue is in this District with assignment to the East St. Louis Division because a substantial part of the events or omissions giving rise to these claims occurred in Madison County, including Plaintiff's purchase and/or use of the Product, and awareness of and/or experiences with the issues described here.

Parties

25.     Plaintiff Elizabeth Steines is a citizen of Godfrey, Madison County, Illinois.

26.     Defendant is a California corporation with a principal place of business in California.

27.     Plaintiff purchased an iPhone at a T-Mobile Store, 317 Homer M Adams Pkwy Ste I, Alton IL 62002 between roughly December 2021 and May 2022.

28.     Plaintiff expected the iPhone would come with a charger so she could use her device.

29.     Plaintiff did not have numerous chargers from previous iPhones because like most people, she did not get a new one every year.

30.     Plaintiff's most recent iPhone purchase was made more than two years ago when chargers were included and/or were not compatible with the current iPhone.

31.     Plaintiff expected that if she was buying something which required the purchase of another item to render the purchase functional, this information would be prominently disclosed to her.

32.     Plaintiff bought the Product at or exceeding the above-referenced price.

33.     Plaintiff paid more for the Product than she would have had she known it did not

come with a necessary element, a charger, as she would not have bought it or paid less.

34.    Plaintiff was forced to pay at least $30 for an additional charger and/or go without a charger until she was able to buy one to charge and use her phone.

35.    Plaintiff intends to, seeks to, and will purchase an iPhone again at the price indicated if she could do so with assurances it comes with the necessary components to render it functional or if the price is reduced by the amount of the charger.

36.    Plaintiff is unable to rely on the labeling of not only iPhones, but other products where another item is required and essential for use, such as a remote control without batteries, because she is unsure whether she would be buying only part of what she expects.

Class Allegations

37.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, South Dakota, Wyoming, North Carolina, Utah, Montana, Idaho, Mississippi, Virginia, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

38.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

39.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

40.    Plaintiff is an adequate representative because her interests do not conflict with other members.

41.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

42.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

43.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

44.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

45.    Plaintiff incorporates by reference all preceding paragraphs.

46.    Plaintiff relied on a basic expectation that a mobile phone requiring the necessary element for functionality, such as a charger, would be included with the phone, because anything else would be the sale of an incomplete and/or non-functional product.

47.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

48.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

49.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

50.    Defendant intended that members of the Consumer Fraud Multi-State Class would

rely upon its deceptive conduct, which they did, suffering damages.

Breach of Contract

51.    Plaintiff and Defendant entered into a contract for the sale of the Product.

52.    The terms included the Product would include the necessary components to render it functional, such as a charger.

53.    Plaintiff paid money for the Product, which Defendant received.

54.    Defendant breached the contract because the Product did not include the necessary components to render it functional, such as a charger.

55.    Plaintiff was injured by having to go without a charger and/or paying additional money for a charger, without paying any reduced price for the Product.

Breaches of Express Warranty,<br>Implied Warranty of Merchantability/Fitness for a Particular Purpose<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

56.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it included the necessary elements for functionality, such as a charger, because anything else would be the sale of an incomplete and/or non-functional product.

57.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

58.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

59.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it included the necessary elements for functionality, such as a charger, because anything else would be the sale of an

incomplete and/or non-functional product.

60.     Defendant's representations affirmed and promised that the Product (1) included the necessary elements for functionality, such as a charger, by depicting it in ads that highlighted its capabilities and features, which required the device to be on with sufficient power and (2) would not be sold missing any essential components that would render it incomplete and/or non-functional.

61.     Defendant described the Product so Plaintiff believed it included the necessary elements for functionality, such as a charger, because anything else would be the sale of an incomplete and/or non-functional product, which became part of the basis of the bargain that it would conform to its affirmations and promises.

62.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

63.     This duty is based on Defendant's outsized role in the market for this type of Product, a company known for its commitment to its customers, often with the phrase, "it just works," which was false because the absence of a power source meant it could not work.

64.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

65.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

66.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

67.     Defendant has been under investigation in countries including Brazil, where it was fined by governmental authorities for failing to provide a charger with its iPhones.

68.    Authorities there even issued orders requiring Defendant to include a charger with its iPhones based on principles of fair dealing and consumer expectations to receive a functional device.

69.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

70.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it did not include the necessary elements for functionality, such as a charger.

71.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it would function as a smartphone, which meant the ability to make calls, send text messages, use the internet, study, do work and/or play games among other things, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

72.    Defendant had a duty to truthfully represent the Product, which it breached.

73.    This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its commitment to providing products that are reliable and just work, without customers having to know all the technical details of how those things happen.

74.    These representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that Defendant has been known for.

75.    These promises were outside of the standard representations that other companies may make in a standard arms-length, context where products are sold through retailers.

76.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

77.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

78.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained cream, a dairy ingredient.

79.    Defendant is the one of the two largest sellers of smartphones in the world, and it knew a significant percentage of its customers would be negatively affected by removing the charging capability from the iPhone.

<u>Unjust Enrichment</u>

80.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Injunctive relief to remove, correct and/or refrain from the challenged practices;

3.  Awarding monetary, statutory and/or punitive damages and interest;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   December 27, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com